Celia Olmedo Wood, Plaintiff and Appellee, v. Romualdo Rivera et al., Defendants and Appellants.

No. 9007. Argued March 7, 1945.—Decided May 21, 1945.

46

*E. Martínez Rivera* for appellants. *Miguel Olmedo Toste* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

Romualdo Rivera married the plaintiff in 1918 and divorced her in 1935. In 1920 the couple acquired a lot on which they built a house in 1922. The said property belonged to the community partnership, which has never been liquidated. Although appraised at $1,500 for tax purposes, the undisputed testimony was that it was worth at least $3,000.

On March 28, 1938 Pablo Meléndez —a friend and fellow-accountant of Rivera, who was an Income Tax Inspector— filed suit against Rivera for collection of money. The complaint alleged that Rivera had executed a promissory note in favor of Meléndez for $900 on May 15, 1934, and that the note had come due on June 30, 1935—which was prior to the divorce herein—but had not been paid. The complaint also recited that Rivera was still married, although, as we have seen, this was no longer true.

A default judgment for $900, and $100 for costs and expenses, was entered against Rivera. On April 23, 1938 the latter signed a waiver of his right to appeal in order to enable Meléndez to execute on the judgment immediately. On May 25, 1938 the lot and house were sold at a public sale in execution of the said judgment to Philip El Koury for $500. The plaintiff was not a party to the said suit, and was never notified of any of the proceedings.

On July 14, 1938 the plaintiff filed the instant suit against Meléndez, Rivera, and El Koury, praying for the nullity of the judgment in the suit by Meléndez against Rivera and of the attachment and sale of the aforesaid property to El

Koury, insofar as it affected her one-half interest in the said property as a member of the community partnership. The plaintiff alleged that the note was simulated in order to deprive her of her rights in the community property. After a trial on the merits, the district court entered judgment for the plaintiff, and the defendants appealed.

The district judge wrote an able and discerning opinion in which, after analyzing the testimony, he concluded that the note was simulated and was executed with the sole purpose of defrauding the plaintiff of her rights in the property in question. We shall not restate all the testimony. It is enough to say that the conclusion of the lower court on this point is amply supported by the proof, and that we heartily agree with it. This case reeks of fraud, and we shall refer it to the *Fiscal* of this court to determine if the attorney who represented Rivera when the elaborate scheme herein was concocted and consumated acted improperly. However, in fairness to the present attorneys for the defendants, we make it clear that they came into the case after the present suit was filed.

Rivera, Meléndez, and El Koury were all represented in this case by the same attorney at the trial in the district court. At the beginning of the trial he announced that Rivera and Meléndez were willing to have judgment entered against them because of the doubt as to whether the judgment against Rivera in the suit by Meléndez against the former on the note could affect the interest of the plaintiff in the community property, in view of the facts that (1) the plaintiff was not notified thereof and (2) the plaintiff and Rivera were divorced prior to the filing of the suit by Meléndez. But since this same attorney announced that El Koury would continue to resist the claim herein on the ground that he was a purchaser in good faith at the public sale of the property, the district court very properly heard proof as to the fraud of Rivera and Meléndez in order to determine if El Koury was involved therein. Moreover,

there was an additional reason why the stratagem of the defendants to avoid the taking of testimony as to fraud was properly blocked by the district court. To nullify a judgment because of the lack of service of process or of joinder of parties has a wholly different legal effect than to take the same action because the note sued on was fraudulently simulated. Under the first theory one need only institute a new suit with the proper notification and joinder of parties; but if the second theory prevails, the alleged obligation is dead beyond revival.

The district court held that "the testimony is not sufficiently robust to convince us of the fraudulent participation of El Koury in the conspiracy of Meléndez and Rivera". The lower court nevertheless entered judgment against all three defendants. It found against El Koury on the theory that once the marital ties of the plaintiff and Rivera were severed, the plaintiff acquired a right to one-half of the community property; and that El Koury was not a *tercero* under the Mortgage Law because, although the Registry of Property showed that the property was recorded in the name of Rivera and the plaintiff as his wife, it was El Koury's duty to determine if the community partnership had been dissolved by divorce, "which was a judgment *in rem, Estate of Lee,* 200 Cal. 310, which operates on the matrimonial status which is the *res,* and which was notice to the world that such a judgment had been entered, obligator- on everybody, and of which all are charged with knowledge." [1]

We accept the conclusion of the district court on the facts as to the fraudulent participation of El Koury in the scheme to defraud the plaintiff. But we do not stop to examine its theory that El Koury was chargeable as a matter of law with constructive notice of the divorce. We find it unnecessary to examine this theory because we are satisfied from all

[1] The district court quoted extensively from *Roemer* v. *Traylor,* 128 S.W. 685 (Tex., 1910), in support of this theory.

the testimony and the surrounding circumstances that El Koury had actual notice of all the facts at the time of the public sale, making it impossible for him to be a *tercero* under § 34 of the Mortgage Law (Cf. *Larracuenta* v. *Fabián,* 56 P.R.R. 743, 757; *Escalera* v. *West India Oil Co.,* 43 P.R.R. 551; *Ayllón et al.* v. *González et al.,* 28 P.R.R. 61; *Annoni* v. *Heirs of Nadal,* 59 P.R.R. 638, 642; § 7, Act of March 9, 1905, as found at p. 123, Code of Civil Procedure, 1933 ed. See *National City Bank* v. *De La Torre et al.,* 54 P.R.R. 219; 54 P.R.R. 651).

We agree with the plaintiff that "the testimony indicates that El Koury was an agent of Rivera, that he was not a purchaser in good faith, and that he was only a straw man". Rivera, an Income Tax Inspector, had kept the books of El Koury until a Treasury Department regulation forbade this practice, whereupon Rivera obtained the same job for his daughter. And on cross-examination by the *attorney for El Koury,* Rivera testified as follows.[2]

"Q. If the opposing party had accepted the settlement suggested by the Judge to reacquire that property by paying $500 to El Koury, would you have paid that money, A. I would have paid it. Whatever would have been the result of the trial, I would have paid it. Q. Why did Mr. Philip El Koury intervene in this matter, why was he interested in this house? A. At my suggestion. Q. Why did you make that suggestion? A. I wanted to keep the house, in order that a bidder might not appear and go off with the house. Q. Then, at that time, your daughter was working in the office of Mr. Philip El Koury? A. Yes, sir. Q. Are we to understand then that what you were doing was avoiding that this house fall into the hands of another person from whom you could not reacquire it in the future? A. Exactly. Q. And you say that whatever the result of this suit, that house, sooner or later, will be for your daughters. A. I say that before my daughter and I would not live tranquilly if I did not fulfill that."

[2] As hereinafter noted, this case was tried twice. Rivera testified at the first trial, but not at the second. The quoted testimony is taken from a transcript of his testimony at the first trial, which was introduced as an exhibit by the plaintiff.

The parties concerned were either extremely naive or completely cynical in the way they handled the "sale" to El Koury. The property, worth at least $3,000, was sold in execution of a $1,000 judgment. The alleged creditor, Meléndez, "received" only $500. Meléndez did not bother to bid up to the amount of judgment; Rivera did not bother to bid up to the value of the property, instead the property was "sold" to El Koury for $500, a check for that amount was issued by the marshal to Meléndez, who endorsed it and gave it to Rivera, who cashed it. What Rivera did with the proceeds does not appear. But it is difficult to believe that El Koury, the straw man, did not receive the proceeds from Rivera as reimbursement for the $500 which he furnished for the "purchase price" at the sale.

After the "purchase" by El Koury, Rivera, according to the testimony of his daughter, asked his wife through his daughter to sign a document which Rivera called a "mortgage". When the plaintiff refused to sign it, Rivera told their daughter he would finally obtain the property any way. In the said document, which was never signed but which was introduced in evidence herein, El Koury appears as "selling" the property—worth $3,000—to Rivera and to the plaintiff for $1,100, and Rivera and the plaintiff appear as mortgaging it to Gonzalo Aponte for $1,100. But Rivera spoke to his daughter of a mortgage, not a sale. He did not mention *reacquiring* the property; he discussed *mortgaging* it. Indeed, in his own testimony, forgetting that El Koury had already "purchased" the property, he inadvertently blurted out the truth in speaking of *mortgaging it in order to save the house*. And that Rivera was still conducting himself as though he was the owner is also borne out by the tax receipt for 1940–41 showing him as the owner.

There was still another episode which sheds light on the true state of affairs. As will be hereinafter noted, the instant case was before this court on a previous occasion, when it was remanded to the district court for the latter to act on

a possible motion for a new trial. Such a motion was made and it was granted. But before it was granted, the attorney for El Koury, Rivera, and Meléndez obtained an order of the district court cancelling the notice in the Registry of the pendency of this action.[3] The order of cancellation of the *lis pendens* was obtained on February 15, 1941. Two days later, on February 17, El Koury executed a deed purporting to sell the property to one Balbino Balbín for $2,500. (This, let it be noted, was a "sale" of a property which some years ago was worth more than $3,000 and which Rivera had permitted to be "sold" for $500 at the public sale.) And Balbín on that same date appears as mortgaging the property for $1,000 to the *second* wife of Rivera.

The last link in this chain of circumstances is that El Koury never appeared in this case to testify or to explain his position in all the maneuvers which were executed to defraud the plaintiff. The same attorney who represented all three defendants—Rivera, Meléndez, and El Koury—chose not to produce the latter as a witness.

The conclusion is irresistible that El Koury must have known the facts. He let Rivera get him into this situation. He must look to Rivera to extricate him from it. But the interest of the wife in this property must under all the circumstances be held inviolate from such a scheme of which we are satisfied El Koury had notice when he purchased the property at the public sale. To hold otherwise would be to allow Rivera to insulate himself against the consequences of his fraudulent conduct by thrusting a straw man between himself and his victim. We hold that El Koury was not a *tercero*.

■ This case has been before us on other occasions. It was originally heard on the merits and decided in favor of the defendants by a district judge who died without approv-

---

[3] On motion of the plaintiff, when apprised of the facts, the district court set aside its order and reinstated the notice of *lis pendens*.

ing a transcript of the testimony which was required for the appeal which the plaintiff had taken to this court. In a *per curiam*, 57 *D.P.R.* 985–6, although we technically dismissed that particular appeal, we did not close the case. Instead, we sent it back to the district court to determine in its discretion if a new trial should be granted. Acting pursuant to our order, the district court granted a new trial. The defendants appealed from the said order. In a formal opinion we dismissed that appeal as frivolous. 59 P.R.R. 488.

The appellant strenuously argues here that our original order reserving for the plaintiff the right after remand to move in the district court for a new trial, the order of the district court granting a new trial, and our affirmance of the latter, were all beyond the authority conferred by the statutory law of this jurisdiction. But that question was necessarily decided by our opinions in 57 *D.P.R.* and in 59 P.R.R., particularly in the latter. The answer there given constitutes the law of this case. *Escartín* v. *Insular Police Commission*, 52 P.R.R. 701. Litigation must end at some point. Only in a different case would we be justified in re-examining the rule already laid down to govern this case. For the same reasons, the argument of the appellants that the instant case was *res judicata* by virtue of our judgment in 57 *D.P.R.* must be rejected.

■ We likewise find no merit in the contention that no case was properly pleaded against El Koury. Without examining in detail the allegations themselves, it is sufficient to say that the pleadings must be considered as amended to conform to the proof on the question of the notice of El Koury, particularly as a considerable portion of the testimony on that question came out, as we have seen, through examination of witnesses conducted by his own counsel. As a matter of fact, El Koury in his answer set up as a defense that he was a *tercero*.

■ The final contention of the defendants is that the district court abused its discretion in imposing counsel fees

of $500 on them. The conduct of Rivera and Meléndez deserves a much harsher word than *temeridad*. And El Koury, with notice of the actions of Rivera, permitted Rivera to use his name to perpetrate a fraud. Far from finding that the district judge abused his discretion in awarding attorney's fees to the plaintiff, we commend him for this action.

The judgment of the district court will be affirmed.

Mr. Justice De Jesús did not participate herein.